IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Diamond, | ) |
|     Plaintiff, | ) |
| v. | ) No. 17 C 3900 |
| Mark Nicholls and Sid Nicholls, | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In this securities fraud case, plaintiff—an Illinois resident and citizen—alleges that defendants—a father (Sid Nicholls) and son (Mark Nicholls) who reside in Ottawa, Canada—violated federal and Illinois securities laws; breached or conspired to breach a contract and fiduciary duties; and defrauded and conspired to defraud investors through a scheme involving the sale of securities in a holding company that controlled various entities in the synthetic turf industry. Before me is defendant Sid Nicholls's motion to dismiss for lack of personal jurisdiction, which I deny for the following reasons.

According to the complaint, between July 2008 and January 2009, Mark Nicholls formed four related Delaware entities—Turf

1

Industry, Inc., UBU Sports, Inc., Turfscape, Inc., and Turf Nation. Am. Compl. at ¶¶ 16-19. "At some point," the complaint continues, Sid Nicholls "assumed primary responsibility for and de facto control over Turf Nation," although Mark was the President of Turf Nation in 2011 and 2012 and continues to serve as a director or officer of Turf Nation, exercising joint authority and control over the company with Sid. *Id*. at ¶¶ 19-20. Turf Nation was the sole supplier of artificial turf to Turfscape and UBU Sports, the latter of which has its principal place of business in Downers Grove, Illinois. *Id*. at ¶¶ 21, 10. UBU Sports's primary business was the sale of synthetic turf surfaces for sports fields and facilities, which it purchased in substantial quantities between 2009 and 2013 pursuant to a line of credit from Turf Nation. *Id*. at ¶¶ 17-22.

In 2013, Mark formed a Georgia holdings company called Turf Industry Holdings, LLC ("TIH"), as a vehicle for investment in UBU Sports, Turfscape, and a third, related company. Defendants then began marketing and selling membership interests and notes in TIH, some of which plaintiff purchased. Plaintiff alleges that Mark made numerous misrepresentations to investors on topics ranging from his (Mark's) past business experience and successes; his (Mark's) significant personal investment in TIH; and the existence of valid pre-existing agreements to ensure, among other things, the stability of UBU Sports's supply chain.

2

Plaintiff's most salient allegations against Sid involve his alleged participation in the fabrication of a supply contract between Turf Nation and UBU Sports. According to the complaint, at the time defendants began seeking investors for TIH, there was no written supply agreement between UBU Sports and Turf Nation. Fearing that the absence of such a contract would "spook" investors, Mark and Sid created one in October of 2014, which they backdated to January 15, 2013, and represented as having been in force since that time. Then, in November of 2014, Sid purported to "terminate" the fabricated contract in a letter he sent to Mark at his home in Ontario. Sid and Mark did not inform plaintiff, the TIH Board of Managers, or UBU Sports's management or employees about the putative "termination" of the fabricated agreement.

Sid argues that I lack personal jurisdiction because plaintiff has offered no evidence that he has relevant contacts with the state of Illinois or that he "expressly aimed" the alleged wrongdoing at Illinois, knowing it would harm plaintiff in Illinois. I disagree. Plaintiff attaches to his complaint the allegedly phony supply contract, between Turf Nation (on whose behalf Sid signed in his capacity as a corporate officer) and UBU Sports, an entity headquartered in Illinois. Plaintiff also attaches correspondence between Mark and Sid that on its face, supports his allegations that Sid (and Mark) intentionally

3

fabricated and backdated a supply contract with no intent that the entities on whose behalf they purported to sign would perform under the contract, solely for the purpose of misleading potential investors.

Sid does not dispute that he knew UBU Sports operated out of Illinois, but he claims that because he did not know that the supply contract between UBU Sports and Turf Nation would be used to defraud investors located in Illinois, personal jurisdiction is inappropriate under *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010). But that case is factually inapposite. The defendant in *Mobile Anesthesiologists* was an entity that operated only in Texas, and whose sole member had never conducted business, formed contracts, attended events, or performed professional duties in Illinois. The plaintiff's assertion of personal jurisdiction was based exclusively on the defendant's use on its website, accessible by Illinois residents among others, of a name that allegedly infringed an Illinois entity's trademark. The court concluded that the maintenance of a generally accessible website alone did not establish defendant's "express aiming" of tortious misconduct at Illinois. It does not stand for the proposition that a defendant who enters into a sham contract with an Illinois entity for the purpose of defrauding

4

investors can be sued only in a forum where he knows those investors reside.

Indeed, while a defendant's awareness that the plaintiff will be injured in the forum state is certainly a factor that can support personal jurisdiction, none of Sid's authorities suggests that such awareness is a *sine qua non* of personal jurisdiction. As Sid acknowledges, specific jurisdiction exists "where the cause of action arises out of or relates to the defendant's activities in the forum state." Mem. at 8 (quoting *Andersen v. Sportmart, Inc.*, 57 F. Supp. 2d 651, 656-57 (N.D. Ind. 1999) (stream of commerce theory did not support Indiana courts' personal jurisdiction over Taiwanese entity that acted as a purchasing agent for a product that caused injury in Indiana). Regardless of whether Sid knew that plaintiff resided in Illinois, he surely knew that UBU Sports operated out of Illinois, and the complaint fairly alleges claims arising in part out of Sid's alleged participation in forming a fraudulent contract with that entity.

There is no merit to Sid's argument that Illinois' "fiduciary shield" doctrine insulates him from personal jurisdiction because he signed the phony contract on behalf of Turf Nation. Sid cites *Club Assistance Program, Inc. v. Zukerman*, 594 F. Supp. 341, 345 (N.D. Ill. 1984), for this argument, but as that very case acknowledges, a defendant's tortious conduct

undertaken on his own behalf and directed at the forum does not trigger the "fiduciary shield" doctrine. *Id*. Construing all of the complaint's allegations in plaintiff's favor, I conclude that Sid's fabrication of the supply contract was at least in part for his own benefit, not solely for the benefit of the entity on whose behalf he purported to sign it.

Because I conclude that Sid's alleged participation in the fabricated supply contract and supporting evidence are sufficient to confer personal jurisdiction, I need not consider plaintiff's remaining allegations directed to Sid. The motion to dismiss is denied.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: March 1, 2018